IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CURTIS JACKSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | NO.  5:09-CV-274 (MTT) |
| VS. | : | |
| | : | |
| BRAD CHRISTENSEN, *et al.*, | : | |
| | : | Proceedings Under 42 U.S.C. §1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| _____ | : | |

## RECOMMENDATION

Before the Court are three separate motions for summary judgment, filed by Plaintiff (Doc. 72), by Defendant D. Z. Patterson (Doc. 55) and by Defendants Brad Christensen, Todd Haskins, and Scott Raper (Doc. 41).  Because the undisputed evidence establishes that Plaintiff's claims are barred by the statute of limitations, Defendants are entitled to judgment as a matter of law.  In addition, Plaintiff has failed to show that there are genuine issues of material fact, and Defendants are entitled to judgment as a matter of law on the merits.  Accordingly, it is hereby **RECOMMENDED** that Defendants' Motions (Docs. 41, 55) be **GRANTED**, and that Plaintiff's Motion (Doc. 72) be **DENIED**.

## FACTUAL AND PROCEDURAL HISTORY

On February 9, 2009, Plaintiff was convicted by a jury in the Superior Court of Monroe County, Georgia, on two counts of Theft by Receiving Stolen Property, and one count of operating a motor vehicle without a license tag.  The two counts of theft by receiving involved two pieces of heavy equipment found on a trailer in Plaintiff's possession on August 1, 2007. The jury was unable to reach a verdict on a third count of theft by receiving involving the trailer.

[1]

On each felony count, Plaintiff was sentenced to a ten year sentence, the two sentences to be served consecutively.

Plaintiff now brings claims related to the search and seizure of his property and the circumstances of his arrest. He brings several claims under 42 U.S.C. § 1983, including: (1) racial discrimination against Haskins in violation of the Fourteenth Amendment; (2) denial of due process against Christensen, Haskins, and Patterson in violation of the Fourth Amendment; and (3) violation of the Fifth Amendment protection against self-incrimination against Christensen, Raper, and Patterson. Doc. 16. He has also brought a claim of defamation under Georgia law.

Based upon a review of the record in this case, and in a light most favorable to Plaintiff, the facts of this case are as follows: On August 1, 2007, Plaintiff pulled his tractor-trailer over on the exit ramp off of Interstate 75 in Monroe County, Georgia. Pl.'s Aff. ¶ 4 (Doc. 71). Plaintiff was towing a low-boy trailer with a Caterpillar Packer and a Caterpillar Bulldozer. Haskins Aff. ¶8 (Doc. 41-3). While parked on the exit ramp, Plaintiff was approached by Defendant Sgt. Haskins due to the fact Plaintiff was illegally parked on the exit ramp. Id. at ¶3. Additionally, Plaintiff's tractor did not have a front bumper or license plate. Id. at ¶5. Plaintiff was unable to provide his driver's license, and his insurance was expired. Pl's Aff. ¶¶11-12. After checking the vehicle identification number (VIN) on the trailer and the serial numbers on the Caterpillar equipment, Haskins discovered that the trailer was reported stolen and that the equipment came back as "no record found." Id. at ¶¶11-12, 15. Plaintiff was arrested for theft by receiving stolen property. Id. at ¶13-14.

Haskins had the truck impounded, and found during his inventory search that the ignition of the tractor had been hotwired. Id. at ¶15. He ran a search of the tractors VIN and found that the tractor was registered out of Texas with a Texas owner and an expired license plate. Id. After the impound hold on the tractor was released, Buice's Towing acquired possession of the tractor through the abandoned vehicle procedures in the Monroe County Magistrate Court. Christensen Aff., ¶23, Doc. 41-4.

After Plaintiff's arrest, Defendant Sgt. Christensen continued to investigate the status of the Caterpillar equipment. Christensen Aff. ¶6 (Doc. 41-4). Christensen confirmed that the Caterpillar Bulldozer was reported stolen. Id. at ¶7. Christensen also discovered that Travelers Insurance Company paid a claim involving the stolen equipment, so he contacted Travelers' investigator, Defendant D.Z. Patterson, to recover the equipment. Id. at ¶9. On August 3, 2007, Christensen and Patterson met to take photographs of the equipment. Id. at ¶10. The same day, while Plaintiff was out on bond, he returned to the Sherriff's Office to retrieve personal items from his arrest. Pl's Aff. ¶35 (Doc. 71). Christensen was informed that Plaintiff was at the Sherriff's Office, so Christensen went to the Sherriff's Office and arrested Plaintiff for the additional count of theft by taking. Christensen Aff. ¶13.

After arresting Plaintiff, Christensen impounded Plaintiff's Ford F-350 pick-up truck, which Plaintiff had driven to the Sherriff's Office and parked outside. Id. at ¶15. During an inventory search of the vehicle, Christensen found evidence in the truck pertinent to his investigation in Monroe County and evidence that led to the discovery of additional stolen equipment in Bibb County, which Plaintiff was also arrested for in Bibb County. Id. at ¶¶17-21;

Pl's Aff., ¶69. The Ford pick-up truck was impounded and was later repossessed by Ford Motor Credit.

After learning of the possibility of additional stolen equipment at Macon State College in Bibb County, Patterson went to Macon State College to continue his investigation on behalf of Travelers. Patterson Decl. ¶¶18-25 (Doc. 55-3). Patterson then returned to the Monroe County Sherriff's Office to ask Plaintiff some questions about the stolen equipment. Id. at ¶26. Defendant Raper was told to bring Plaintiff into the investigations area so Patterson could interview Plaintiff. Raper Aff. ¶4 (Doc. 41-5). Plaintiff told Raper he did not wish to be interviewed without a lawyer, but Raper took Plaintiff by the arm and escorted him to the interview room nevertheless. Pl's Aff. ¶54. While in the interview room, Plaintiff told Patterson he did not want to answer any questions. Id. at ¶55. However, Plaintiff did respond "yes" when asked if he was doing a job at Macon State College. Id.

As a result of Plaintiff's arrest, incarceration, and subsequent reporting of the arrest in the newspaper and on television, Plaintiff lost his construction contract with Macon State College. Id. at ¶¶63-64. Plaintiff also lost other construction contracts as a result of his arrest. Id. at ¶73. Plaintiff now brings this action against Defendants Haskins, Christensen, Raper, and Patterson alleging violations of the Equal Protection Clause of the Fourteenth Amendment, illegal search and seizure under the Fourth Amendment, violations of Due Process under the Fifth and Fourteenth Amendments, and violation his right against self-incrimination under the Fifth Amendment. Recast Complaint (Doc. 16). Plaintiff seeks compensatory damages for the loss of the tractor, Ford F-350 pick-up truck, Caterpillar equipment, construction contracts, and future earnings totaling $41,650,000.00. Id.

LEGAL ANALYSIS

In accordance with Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled judgment as a matter of law. Id. at 324-26. If the evidence presented by the nonmovant is "not significantly probative" or is "merely colorable," then summary judgment may be granted. Anderson, 477 U.S. at 249. In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 332.

Statute of Limitations

Defendants Christensen, Haskins, and Raper, as well as Defendant Patterson, are entitled to summary judgment because Plaintiff's claims are barred by the statute of limitations. In his Recast Complaint, Plaintiff stated various 42 U.S.C. § 1983 claims against Defendants

Christensen, Haskins, Raper, and Patterson. Plaintiff also stated a state law defamation claim against Defendant Christensen. Doc. 16.[1]

The statute of limitations for a 42 U.S.C. § 1983 claim arising out of events in Georgia is two years. Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir.1996). In Section 1983 cases, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008) (citations omitted). Here, the statute of limitations on Plaintiff's claims against Haskins began to run on August 1, 2007, the date Haskins initially arrested Plaintiff. The statute of limitations on Plaintiff's claims against Christensen, Raper, and Patterson began to run on August 3, 2007, the date Plaintiff was subsequently arrested for an additional count of theft by receiving and taken for questioning.[2]

The undisputed evidence in this case shows that Plaintiff did not properly deliver his Complaint to prison officials with proper postage until August 4, 2009, the day after his limitations period expired. Under the prison mailbox rule, a prisoner's pleading is deemed filed on the date that the litigation papers are delivered to prison officials for mailing. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir.2001). However, a prisoner cannot invoke the mailbox rule if his pleading is filed late due to his failure to affix proper postage to the outgoing legal mail. See Dison v. Whitley, 20 F.3d 185, 186-87 (5th Cir.1994); Clay v. United States, 2007 WL 4336356 (N.D.Ga.) (unpublished opinion). The determination of the date that the

---

[1] The basis of Plaintiff's defamation claim is not altogether clear.

[2] While not explicitly stated by the Plaintiff, an argument could be made that an additional cause of action accrued when the hold on the tractor was released and the tractor was sold via the abandoned vehicle process. Additionally, a cause of action could have arguably accrued when Ford Motor Company repossessed Plaintiff's F-350 pick-up truck. However, both of these claims would necessarily be against Defendants unnamed or already dismissed from this suit.

prisoner delivered a pleading is a fact question to be resolved by the district court. Sanders v. United States, 113 F.3d 184, 186 n.2 (11th Cir.1997). "[T]he burden is on prison authorities to prove the date a prisoner delivered his documents to be mailed." Washington, 243 F.3d at 1301; Allen v. Culliver, 471 F.3d 1196, 1198-99 (11th Cir.2006). A prisoner's filed sworn declaration stating the date he delivered a pleading to a prison official is presumed to establish the date of delivery absent evidence to the contrary. Washington, 243 F.3d at 1301; Allen, 471 F.3d at 1198-99.

Documentary evidence submitted by Defendants shows that Plaintiff did not deliver his complaint to prison officials with proper postage until August 4, 2009, after the statute of limitations ran. In his affidavit, Plaintiff contends that he delivered his complaint to prison officials for mailing on July 28, 2009 (Pl's Aff. ¶ 82, Doc. 71). Plaintiff initially submitted his complaint to the prison mailroom without postage, in an attempt to use the prison's indigent mailing process. Id. Because Plaintiff had sufficient funds in his prison account, however, he was not entitled to the benefit of the indigent mailing process. Id. at ¶ 84. Prison officials notified Plaintiff on July 30, 2009[3], that his complaint was not mailed because he had a balance of $133.31 in his prison account. Id.; Doc. 75. Rather than returning to the prison mailroom to fill out an Offender Withdrawal Form and have proper postage placed on the complaint for mailing on July 30 or 31, Plaintiff waited until the following Tuesday, August 4, 2009, to attempt to deliver his complaint for mailing. Pl's Aff. ¶ 87, Doc. 71. Plaintiff filled out an Offender Withdrawal Form and affixed proper postage on his complaint to be mailed on August 4, 2009.

---

[3] The Court takes judicial notice that July 30, 2009, was a Thursday, and August 4 was a Tuesday.

Robert's Aff. Exhibit A (Doc. 41-6). Plaintiff gives no reason for his decision to wait six days to attempt to mail his complaint.[4]

Prison officials have sufficiently rebutted Plaintiff's testimony that he delivered his complaint for mailing on July 28, 2009 with evidence that Plaintiff did not deliver his complaint to prison officials with proper postage until August, 4, 2009.  Therefore, Plaintiff cannot invoke the prison mailbox rule for the July 28, 2009 delivery.  Accordingly, Plaintiff's complaint is determined to have been filed on August 4, 2009, and all claims are barred by the statute of limitations.

Plaintiff's state law defamation claims are also barred.  In Georgia, the statute of limitations for filing a defamation claim is one year. O.C.G.A § 9-3-33. The defamation claim accrues -- and the statute of limitations begins to run -- on the date of the alleged defamatory act. Id. In this case, Plaintiff's recast complaint alleges damages from harm to reputation beginning on August 2, 2007. (Doc 16).  Plaintiff's claim thus accrues no later than August 3, 2007.  As noted above, Plaintiff filed his Complaint on August 4, 2009, more than two years after the alleged injury and well outside the one-year statute of limitations.

### Plaintiff's Constitutional Claims

As an alternative basis for summary judgment, the Court notes that Defendants are entitled to summary judgment on the merits as to each of Plaintiff's claims.  Even if Plaintiff's evidence is accepted as true and all reasonable inferences are drawn on his behalf from the evidence, Plaintiff has failed to show that the Defendants violated his constitutional rights.

---

[4] Plaintiff stated that he spoke with Warden Walker on August 3, 2009 about getting his complaint filed the next day, but does not give a reason for not doing so earlier. Pl's Aff. ¶ 86.

Accordingly, Defendants are entitled to judgment as a matter of law. Plaintiff's claims are addressed in sequence below.

1. Equal Protection: Race Discrimination

Plaintiff's claim that Haskins violated the Equal Protection Clause of the Fourteenth by approaching Plaintiff's vehicle and arresting him fails because no evidence exists showing race was a factor in Plaintiff's arrest. The Equal Protection Clause of the Fourteenth Amendment "prohibits selective enforcement of the law based on considerations such as race." Whren v. United States, 517 U.S. 806, 813 (1996). To establish a selective enforcement claim, a plaintiff must present evidence that someone of a different race could have been arrested for the same crime or subject to a search, but the officer failed to do so. Swint v. City of Wadley, 51 F.3d 988, 100 (11th Cir.1995). Bald assertions of racial discrimination cannot support a § 1983 claim, rather a plaintiff must prove the purposeful discrimination on the part of the officer. McClesky v. Kemp, 481 U.S. 279, 292 (1987).

Plaintiff relies on bald assertions to support his discrimination claims, and has failed to present evidence to demonstrate purposeful discrimination on the part of Haskins. Plaintiff contends that Haskins discriminated against him and targeted him as a "D.W.B. (Driving While Black Suspect)." Pl's Aff., ¶ 23 (Doc. 71). Plaintiff believes he was targeted because there were two other trucks parked closer to Haskins patrol car, but Haskins did not approach those vehicles. Id. at ¶ 24. Plaintiff gives no evidence, however, that these other trucks were illegally parked nor did he identify any driver of the other trucks by race or otherwise. There is no evidence to indicate that these trucks were even occupied at the time Haskins arrested Plaintiff. Therefore, Plaintiff cannot establish the purposeful discrimination necessary to maintain a claim for violation of the Equal Protection Clause of the Fourteenth Amendment against Haskins.

2. Due Process: Search and Seizure

Plaintiff's claim that Defendants Haskins, Christensen, and Patterson violated his Fourth Amendment rights by illegally searching and seizing his tractor and Ford F-350 pick-up truck fails because Defendants Haskins and Christensen[5] lawfully searched each vehicle in each instance.

The Fourth Amendment protects individuals from unreasonable searches and seizures during investigatory stops of persons or vehicles. United States v. Arvizu, 534 U.S. 266, 273 (2002). Investigatory stops of persons or vehicles need only be based on reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 30 (1968). Further, commission of a traffic violation provides sufficient reason for stopping a vehicle. United States v. Tapia, 912 F.2d 1367, 1370 n. 1 (11th Cir.1990). Once a vehicle is stopped, an officer can search the vehicle without a warrant if there is probable cause to do so. Maryland v. Dyson, 527 U.S. 465, 467 (1999). Probable cause exists if the facts and circumstances within the officer's knowledge would cause a prudent person to believe the suspect has committed an offense. Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir.1996). "Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information." Id. Additionally, a vehicle can be subject to inventory before impoundment after an arrest. U.S. v. Lee, 586 F.3d 859, 862 (11th Cir.2009).

On August 1, 2007, Haskins observed a tractor-trailer truck illegally parked on an interstate exit ramp, in front of a "No Parking" sign. Haskins's Aff. ¶3 (Doc. 43-1). The tractor had neither a front bumper nor a front license plate. While observing the truck, Haskins

---

[5] Plaintiff also makes a blind assertion that Patterson searched his pick-up truck. However, Plaintiff was incarcerated at the time his truck was searched, thus Plaintiff had no personal knowledge of who searched his truck. Both Christensen and Patterson stated that Patterson took no part in the search.

encountered Plaintiff, who appeared to be checking the tires. Based on the illegal parking and the lack of a front license plate, Haskins had reasonable suspicion to initiate an investigative stop. Haskins asked Plaintiff for his license and registration, but Plaintiff was unable to provide a driver's license. Plaintiff presented an insurance card, which showed that his insurance was expired. Haskins continued his investigation by checking on the tractor's tag and the trailer's VIN. He found that the tractor's tag was registered to Plaintiff's pick-up truck, not the tractor. He also found that the trailer had been reported stolen. These facts established probable cause to arrest Plaintiff for theft by receiving.

In connection with the arrest, the tractor-trailer was impounded pursuant to O.C.G.A. § 40-6-206, which authorizes officers to impound a vehicle if the person in charge of the vehicle is unable to provide for its custody or removal or if report has been mad that such vehicle has been stolen. In an inventory search of the vehicle, Haskins found that the tractor had been hotwired. Further investigation of its VIN revealed that the tractor was registered in Texas and had an expired license plate. After the vehicle was impounded, it was ultimately claimed as an abandoned vehicle by Buice's Towing, who acquired it through the proper procedure in the Magistrate Court of Monroe County.

Two days later, on August 3, Plaintiff was arrested for an additional count of theft by receiving due to an additional piece of Plaintiff's equipment being reported as stolen. At this time, Plaintiff's Ford F-350 pick-up truck was parked outside the police station. Due to Plaintiff's arrest, the truck was impounded. Christensen searched the pick-up truck as part of inventory prior to impoundment. Christensen's Aff. ¶15 (Doc. 41-4). After the Ford pick-up truck was impounded, it was ultimately repossessed by Ford Motor Credit.

Because Plaintiff has failed to establish a genuine issue of material to support his claim that the search and seizure of the tractor and the Ford F-350 pick-up truck were unlawful. The vehicles were impounded pursuant to Georgia law. The inventory search was therefore lawful. "If [a] vehicle has been lawfully impounded, the law enforcement officer may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria." Sammons v. Taylor, 967 F.2d 1533, 1543 (11th Cir. 1992). Plaintiff has not shown that the Defendants in this case were involved in any way in the subsequent repossession of the vehicles was unlawful. The vehicles were repossessed by third parties, and Plaintiff has not offered evidence to indicate that those third parties failed to pursue the proper procedures. Accordingly, the evidence shows that Plaintiff did not have his Fourth Amendment rights violated by the Defendants, and Defendants are entitled to judgment as a matter of law.

3. Fifth Amendment: Miranda and Self-Incrimination

Plaintiff's claim that Defendants Raper and Patterson violated his Fifth Amendment rights when attempting to question him regarding stolen equipment fails for the same reasons this Court dismissed similar claims by Plaintiff against Captain Slaughter and Lieutenant Thompson. See Doc. 23. The Eleventh Circuit Court of Appeals has held that law enforcement officers' failure to follow Miranda procedures "does not violate any substantive Fifth Amendment right so as to create a cause of action for money damages under § 1983." Jones v. Cannon, 174 F.3d 1271, 1290 (11th Cir. 1999). Even if plaintiff's Miranda rights were violated, the remedy would be the exclusion of any evidence taken in the arrest. Id. at 1290-91. In other words, plaintiff may only assert the alleged violation during any criminal proceedings resulting from his arrest— not in a Section 1983 action.

CONCLUSION

For the above reasons, **IT IS RECOMMENDED** that Defendants Christensen, Haskins, and Raper's Motion for Summary Judgment be **GRANTED**, Defendant Patterson's Motion for Summary Judgment be **GRANTED,** and Plaintiff's Motion for Summary Judgment be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 9th day of September, 2011.

s/ Charles H. Weigle<br>
Charles H. Weigle<br>
United States Magistrate Judge